IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

IMPACT, LLC; JONATHAN L. ROGERS; PLAINTIFFS
and LAGUNA PERDIDA RANCH CORP.,
individually and on behalf of all others
similarly situated

v. No. 4:08CV00430 JLH

UNITED RENTALS, INC.; UNITED RENTALS
(NORTH AMERICA), INC.; and
UNITED RENTALS NORTHWEST, INC. DEFENDANTS

**OPINION AND ORDER**

The plaintiffs brought this action against United Rentals, Inc., United Rentals (North America), Inc., and United Rentals Northwest, Inc. (collectively "United Rentals"), for breach of contract and unjust enrichment. Laguna Perdida Ranch Corporation has filed a motion for summary judgment as to its breach of contract claim against United Rentals. United Rentals responded to the motion and has filed a cross-motion for partial summary judgment. The Court, having reviewed all materials submitted by the parties and relied on for authority, hereby grants United Rental's cross-motion for partial summary judgment and denies Laguna's motion for partial summary judgment.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party

meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*' " *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## II.

Laguna is a Texas corporation with its principal place of business in Oilton, Texas. On or about November 20, 2006, Laguna rented a Power Snake Drum from United Rentals in Laredo, Texas. Just like every other customer renting equipment from United Rentals, Laguna executed a two-page, written rental agreement. The first page of the rental agreement indicated that Laguna would rent one Power Snake Drum priced at $47.00 per day from United Rentals for one day. An itemized list of the charges followed:

> Subtotal: 47.22
> Rental Protection: 6.58
> Tax: 4.44
> Total: 58.24
> Deposit: 58.24

(Pl.'s Ex. 1(a).) In a box below the itemized list of charges was a description of United Rentals' rental protection plan:

> OPTIONAL RENTAL PROTECTION PLAN: *THE RENTAL PROTECTION PLAN IS NOT INSURANCE!* Upon accepting the Optional Rental Protection Plan, the Customer agrees to pay a charge equal to 14% of the rental charges on Equipment Customer wants covered by the Rental Protection Plan. In return, as set out on the

2

back page, United agrees to waive certain claims for accidental damages to such covered Equipment occurring during normal and careful use. Customer remains liable for all damages and loss due to theft listed under The Rental Protection Plan provisions in the Terms and Conditions on the back page, including Customer's negligence. *Customer Accepts (_____) Customer Declines (\_\_\_\_\_)*

(Pl.'s Ex. 1(a).) At the bottom of the first page of the agreement was a signature line. The provision above the signature line stated:

> *READ BEFORE SIGNING:* United hereby leases to Customer the Equipment [as defined in the Terms and Conditions on the reverse side] and Customer hereby accepts all *TERMS AND CONDITIONS* listed in this rental agreement, including the Terms and Conditions set forth on the reverse side, which the undersigned has read and understands. REMINDERS: (1) Rates do not include fuel or delivery; (2) Optional Rental Protection Plan charge is 14% of the total rental charge for covered equipment; (3) Customer pays for all time the Equipment is out, including Saturdays, Sundays and Holidays. (4) This rental agreement supercedes all other purchase orders or terms and conditions contained in any of the Customer's agreements or forms; (5) Customer assumes all risk and is responsible for all damages and other costs, including late charges. Details of the above as well as other obligations and responsibilities are contained in the TERMS AND CONDITIONS ON REVERSE. THE INDIVIDUAL SIGNING BELOW AS OR AN BEHALF OF CUSTOMER: (1) AGREES TO ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS RENTAL AGREEMENT, (2) ACKNOWLEDGES RECEIPT OF THE EQUIPMENT IN GOOD WORKING ORDER AND, (3) IS FULLY FAMILIAR WITH ITS OPERATION AND USE.

(Pl.'s Ex. 1(a).) The second page of the agreement listed "ADDITIONAL TERMS AND CONDITIONS" to which the parties were bound. (Pl.'s Ex. 1(b).) One such term stated:

> **22.  *ENTIRE AGREEMENT / ONLY AGREEMENT***
> The terms and conditions on the first page of this Rental Agreement, together with the Additional Terms and Conditions hereof, represent the entire agreement between Customer and United with respect to the Equipment and the rental of the Equipment. There are no oral or other representations or agreements not included herein. None of United's rights or Customer's rights may be changed and no extension of the terms of this Rental Agreement may be made except in writing, signed by both United and Customer.

3

(Pl.'s Ex. 1(b).) Another term described the claims that United Rentals would waive "[i]f Customer elects to accept and pay for the Rental Protection Plan . . . on the first page of this Rental Agreement." (*Id.*)

Laguna's representative, Tracy Gilbert, signed and dated the rental agreement at the bottom of the first page. Gilbert did not check either the "Customer Accepts" box or the "Customer Declines" box below the provision describing the optional rental protection plan. Gilbert paid United Rentals $58.24 as a deposit for renting the equipment. The deposit included $6.58 for "Rental protection." When the equipment was returned, United Rentals retained the entire deposit. Neither party has presented evidence as to the conversation that occurred when the rental agreement was executed, so there is no evidence before the Court as to whether Gilbert and the United Rentals' representative discussed whether rental protection would be included in the rental agreement.

**III.**

Both Laguna and United Rentals seek summary judgment on Laguna's breach of contract claim. The parties do not dispute that the rental agreement represents a valid contract between the parties. Rather, they disagree as to the terms of the contract. Laguna argues that rental protection was not included in the contract because Laguna's representative, Tracy Gilbert, did not mark in the space next to the words "Consumer Accepts" below the provision of the agreement describing the rental protection plan. United Rentals, on the other hand, argues that rental protection was included in the contract because Gilbert signed the two-page agreement, which listed "Rental protection" on the itemized list of charges, and paid for the $6.58 rental protection fee.

There is no need for a choice of law analysis because there is no conflict between the law of the State of Texas (the plaintiff's place of incorporation and principal place of business as well as the situs state) and the law of the State of Arkansas (the forum state).

Both Arkansas and Texas exclude consideration of extrinsic evidence when interpreting a contract, unless the contract is ambiguous. *See Fawcett, Ltd. v. Idaho N. & Pac. R.R. Co.*, 293 S.W.3d 240, 255 (Tex. Ct. App. 2009) ("When parties have executed an unambiguous, fully-integrated written agreement . . . the general rule is that extrinsic evidence, whether written or oral, is not admissible to prove either the intent of the parties to a contract or the meaning of contractual terms."); *Vogelgesang v. U.S. Bank, N.A.*, 92 Ark. App. 116, 119, 211 S.W.3d 575, 578 (2005) ("When the terms of a contract are ambiguous and capable of having more than one meaning, extrinsic evidence is permitted to establish intent of the parties, and the meaning of the contract then becomes a question of fact. However, when a contract is free of ambiguity, its construction is a matter of law for the court to determine.").

Likewise, Arkansas law and Texas law agree that the entire contract must be examined and, if possible, construed so that all of the provisions are harmonized. *See Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. Ct. App. 2000) ("In interpreting the contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. If provisions in the contract appear to conflict, they should be harmonized, if possible, to reflect the intentions of the parties. Therefore, we cannot strike down any portion of the contract unless there is an irreconcilable conflict.") (internal citations omitted); *Prock v. S. Farm Bureau Cas. Ins. Co.*, 99 Ark. App. 381, 387, 260 S.W.3d 737, 739 (2007) ("Construction that neutralizes any provision of a contract should never be adopted if the contract can be construed to

give effect to all provisions.") (quoting *Smith v. S. Farm Bureau Cas. Ins. Co.*, 353 Ark. 188, 192, 114 S.W.3d 205, 206-07 (2003)). A contract should be construed to give effect to all of the contract's provisions. *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*, 713 F.2d 370, 374 (8th Cir. 1983). If two clauses in the contract appear to be in conflict, the preferred interpretation is the one that gives a "harmonious interpretation" to the clauses in order to avoid rendering either one nugatory. *Id.*

Although both parties refer to extrinsic evidence regarding the meaning of provisions in the rental agreement,[1] the rental agreement is not ambiguous. The itemized list of charges, which includes a charge of $6.58 for "Rental protection," indicates that rental protection was included in the agreement between the parties. (*See* Pl.'s Ex. 1(a).) The rental protection plan provision on the bottom of the first page of the rental agreement describes the rental protection available and the cost of such protection. Neither the itemized list of charges nor the description of the rental protection plan is ambiguous.

The provision describing the rental protection plan indicates that "[u]pon accepting the Optional Rental Protection Plan, the Customer agrees to pay a charge equal to 14% of the rental charges on Equipment Customer wants covered by the Rental Protection Plan." (*Id.*) Neither this provision nor any other term of the agreement indicates that marking or initialing the line next to the words "Consumer Accepts" is the only way the customer can manifest assent to include rental protection in the agreement. By the same token, nothing in the agreement indicates that checking "Customer Declines" is the only way the parties can manifest that rental protection is not included

---

[1] Again, the extrinsic evidence does not include evidence of the conversation between Gilbert and the United Rentals' representative who assisted him.

in the agreement. Here, neither box was checked, so that portion of the contract document is silent as to whether Laguna accepted or declined rental protection. On the other hand, as noted above, the itemized list of charges included a charge for rental protection. Laguna's agent signed the rental agreement on behalf of Laguna with the charge for rental protection included in the list of charges, thereby indicating assent to the charge for rental protection.[2] Thus, based on the face of the rental agreement, United Rentals agreed to provide Laguna with rental protection, and Laguna agreed to pay the rental protection fee.

Parties are presumed to have read and understood their contracts. *Pittsburgh Steel Co. v. Wood*, 109 Ark. 537, 160 S.W. 519, 521 (1913); *McCaleb v. Nat'l Bank of Commerce of Pine Bluff*, 25 Ark. App. 53, 59, 752 S.W.2d 54, 57-58 (1988); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 599 (Tex. Ct. App. 2008). While the cardinal rule of interpretation of a contract is to give effect to the intention of the parties, the intention that matters is the intention expressed in the contract, not what the parties may have had in mind but did not express. *Connelly v. Beauchamp*, 178 Ark. 1036, 1042, 13 S.W.2d 28, 30 (1929). Here, the itemization of charges in the written contract included a charge for rental protection. Laguna's agent accepted the contract and paid the charge for rental protection. As a matter of law, Laguna agreed to the inclusion of rental protection in its contract with United Rentals.

---

[2] Laguna points out that United Rentals' form contract does not necessarily require customers to pay the total cost of the rental agreement up front; rather, customers are required to pay a deposit. In this particular agreement, however, the rental protection fee is included in the total cost of the lease ($58.24), and that total matches the deposit amount as well as the amount paid ($58.24). (Pl.'s Ex. 1(a).) This indicates that the deposit that Gilbert made was, in fact, the total amount due under the rental agreement.

**CONCLUSION**

For the reasons stated above, United Rentals' cross-motion for partial summary judgment is GRANTED, and Laguna's motion for partial summary judgment is DENIED.

IT IS SO ORDERED this 4th day of February, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE